Slip Op. 17-104

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| UNITED STATES,<br><br>    Plaintiff,<br><br>v.<br><br>RUPARI FOOD SERVICES, INC.,<br><br>    Defendant. | Before: Gary S. Katzmann, Judge<br><br>Consol. Court No. 10-00119 |

## OPINION

[The Plaintiff's 19 U.S.C. § 1592 action is exempt from the automatic stay effected by 11 U.S.C. § 362(a) pursuant to 11 U.S.C. § 362(b)(4).]

Dated: August 10, 2017

Mikki Cottet, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for Plaintiff. With her on the brief were Chad A. Readler, Acting Assistant Attorney General, Jeanne E. Davidson, Director, and Patricia M. McCarthy, Assistant Director, of Washington, DC. Of counsel on the brief was Brian J. Redar, Office of Associate Chief Counsel, U.S. Customs and Border Protection, of Long Beach, CA.

Lawrence M. Friedman, Barnes Richardson & Colburn, of Chicago, IL, for Defendant. With him on the brief was Peter A. Quinter, Gray Robinson, P.A., of Miami, FL.

Katzmann, Judge: The issue now before this court appears to be one of first impression: does the automatic stay in bankruptcy, effected by 11 U.S.C. § 362(a) (2012),[1] stay an action for a civil penalty brought by the United States against the bankrupt party pursuant to 19 U.S.C. §

---

[1] All citations to the United States Code are to the official 2012 edition.

1592[2] for alleged fraudulent, negligent, or grossly negligent misrepresentations made in the course of importing goods into the commerce of the country? Or, is that civil penalty action exempt from the automatic stay in bankruptcy because it is "an action or proceeding by a governmental unit . . . to enforce such governmental unit's or organization's police and regulatory power" pursuant to 11 U.S.C. § 362(b)(4)? The court concludes that this 19 U.S.C. § 1592 civil penalty action is exempt from the automatic stay in bankruptcy under 11 U.S.C. § 362(b)(4), insofar as it constitutes an action for the entry, rather than the enforcement, of a money judgment.

## BACKGROUND

The facts of this case span approximately two decades and need not be recited in full here. The relevant portions are as follows: defendant Rupari Food Services, Inc. ("Rupari") is a Florida corporation that purchased crawfish from abroad and sold it to restaurants in the United States. United States v. Am. Cas. Co. of Reading Pa., 39 CIT ___, ___, 91 F. Supp. 3d 1324, 1327 (2015), as amended (Aug. 26, 2015) ("Rupari I"); First Amended Complaint ¶ 3, Aug. 31, 2015, ECF No. 110 ("Compl."). Plaintiff, the United States, on behalf of Customs and Border Protection ("the Government"), alleges that in the summer of 1998, Rupari attempted to enter five containers of

---

[2] Section 1592(a) declares, in relevant part:

> [N]o person, by fraud, gross negligence, or negligence—
>   (A) may enter, introduce, or attempt to enter or introduce any merchandise into the commerce of the United States by means of--
>     (i) any document or electronically transmitted data or information, written or oral statement, or act which is material and false, or
>     (ii) any omission which is material, or
>   (B) may aid or abet any other person to violate subparagraph (A).

Chinese crawfish tail meat by means of documents falsely claiming that the crawfish tail meat originated in Thailand. Rupari I, 91 F. Supp. 3d at 1332; Compl. ¶¶ 43–64. Customs examined and seized these attempted entries. Compl. ¶ 42. On April 9, 2001, Customs issued a pre-penalty notice to Rupari proposing a monetary penalty on the basis of fraud and in an amount equal to the domestic value of the five seized entries, and four entered entries, of Chinese crawfish tail meat. Compl. ¶ 65. On November 21, 2001, Customs issued a penalty notice to Rupari, assessing, pursuant to 19 U.S.C. § 1592(c),[3] a civil penalty for fraud for the violation of § 1592(a). Compl. ¶ 66. The Government maintains that Rupari has not paid the penalties it seeks in this action. Compl. ¶ 69.

On June 20, 2011, the Government filed a complaint against Rupari for violations of 19 U.S.C. § 1592(a).[4] Rupari I, 91 F. Supp. 3d at 1332. An amended complaint was filed on August 31, 2015. Compl. The Government asks this court to "enter judgment for the United States against

---

[3] Section 1592(c) prescribes maximum civil penalties that Customs may impose for fraudulent, grossly negligent, and negligent violations of § 1592(a). "A fraudulent violation of subsection (a) of this section is punishable by a civil penalty in an amount not to exceed the domestic value of the merchandise." 19 U.S.C. § 1592(c)(1). Violations that are grossly negligent are punishable by a civil penalty in an amount not to exceed the lesser of either the domestic value of the merchandise, or four times the lawful duties, taxes, and fees of which the United States is or may be deprived; if the violation did not affect the assessment of duties, then the amount may not exceed 40 percent of the dutiable value of the merchandise. Id. § 1592(c)(2). Violations that are negligent are punishable by a civil penalty in an amount not to exceed the lesser of either the domestic value of the merchandise, or two times the lawful duties, taxes, and fees of which the United States is or may be deprived; if the violation did not affect the assessment of duties, then the amount may not exceed 20 percent of the dutiable value of the merchandise. Id. § 1592(c)(3).

[4] The United States also filed actions against William Vincent "Rick" Stilwell, individually, for recovery of civil penalties for violations of 19 U.S.C. § 1592(a), and American Casualty Co. of Reading Pennsylvania ("American Casualty"), to recover, under bonds, unpaid customs duties. However, all parties agreed to dismiss all claims as to Stilwell and American Casualty with prejudice and without costs, fees, and expenses on July 17, 2015, and March 21, 2016, respectively. Stipulation of Partial Dismissal, July 17, 2015, ECF No. 104; Stipulation of Partial Dismissal, March 21, 2016, ECF No. 121.

Rupari for a penalty in the amount of $2,784,636.18[5] for fraudulent violations of 19 U.S.C. § 1592(a)," or in the alternative, "the maximum amount for" grossly negligent or negligent violations of 19 U.S.C. § 1592(a). Rupari I, 91 F. Supp. 3d at 1332; Compl. ¶ 78. The Government filed its motion for summary judgment on January 15, 2015. ECF No. 79. Rupari filed its response and cross-motion for summary judgment on February 24, 2016. ECF No. 119. Further briefing on the motions for summary judgment has been stayed multiple times since April 15, 2016. See ECF No. 131.

Since January 2017, the parties have filed, and the court has granted, several motions to stay proceedings, in which the parties represented that they were attempting, in good faith, to resolve this action by way of settlement. ECF Nos. 139–47. However, on April 10, 2017, Rupari filed for Chapter 11 bankruptcy protection. See In re Rupari Food Servs., Inc., No. 17-10794 (Bankr. D. Del. filed Apr. 10, 2017). The court maintained the stay on briefing, and ordered that parties report to the court their joint position or, in the absence of a joint position, their respective positions regarding the applicability to this proceeding of the automatic stay effected by 11 U.S.C. § 362(a), or recommend what further action, if any, be taken in this action prior to the resolution of the bankruptcy proceeding. ECF No. 149. The Government reported its position on July 3, 2017, maintaining that it was seeking entry, but not execution of a monetary judgment, and that the civil penalty action pursuant to 19 U.S.C. § 1592(a), commenced to enforce police or regulatory powers, was exempt from the automatic stay provision of the bankruptcy statute. ECF No. 154 ("Pl.'s Mem."). Rupari reported its opposing position on July 27, 2017. ECF No. 160 ("Def.'s Mem.").

---

[5] Per the Government, $2,784,636.18 is the domestic value of the merchandise that Rupari attempted to enter into the United States. Rupari I, 91 F. Supp. 3d at 1332; Compl. ¶ 78.

As in the underlying action, the court possesses jurisdiction pursuant to 28 U.S.C. § 1582.[6]

## DISCUSSION

Bankruptcy petitions initiated by debtors such as Rupari, which are not individual natural persons, are governed by Chapters 7 and 11 of the Bankruptcy Code. See 11 U.S.C. §§ 1101–1174. "In Chapter 11, debtor and creditors try to negotiate a plan that will govern the distribution of valuable assets from the debtor's estate and often keep the business operating as a going concern." Czyzewski v. Jevic Holding Corp., 137 S. Ct. 973, 978 (2017). In general, the filing of a bankruptcy petition operates to stay the continuance of any judicial proceeding against a debtor. 11 U.S.C. § 362(a).[7] See Dominic's Rest. Of Dayton, Inc. v. Mantia, 683 F.3d 757, 760 (6th Cir.

---

[6] Where a party has filed for bankruptcy pursuant to Chapter 11, the non-bankruptcy court in which other litigation is pending possesses concurrent jurisdiction to determine the applicability of a stay. See Chao v. Hosp. Staffing Servs.,Inc., 270 F.3d 374, 384 (6th Cir. 2001) ("Not surprisingly, courts have uniformly held that when a party seeks to commence or continue proceedings in one court against a debtor or property that is protected by the stay automatically imposed upon the filing of a bankruptcy petition, the non-bankruptcy court properly responds to the filing by determining whether the automatic stay applies to (i.e., stays) the proceedings."); In re Baldwin–United Corp. Litig., 765 F.2d 343, 347 (2d Cir. 1985) ("Whether the stay applies to litigation otherwise within the jurisdiction of a district court or court of appeals is an issue of law within the competence of both the court within which the litigation is pending . . . and the bankruptcy court . . . ."); SEC v. Thrasher, 2002 WL 523279, at *1 (S.D.N.Y. 2002); see, e.g., Brock v. Morysville Body Works, Inc., 829 F.2d 383, 387 (3d Cir. 1987) ("We have no difficulty deciding that we may determine the applicability of the automatic stay."); U.S. Dep't of Hous. & Urban Dev. v. Cost Control Mktg. & Sales Mgmt. of Virginia, Inc., 64 F.3d 920, 927 n.11 (4th Cir. 1995); Hunt v. Bankers Trust Co., 799 F.2d 1060, 1069 (5th Cir. 1986) ("While section 362 of the Bankruptcy Code stays the continuation of a judicial proceeding that was commenced before a commencement of the bankruptcy case, the Texas district court had jurisdiction to determine its applicability to the case pending in the Texas district court . . . ."); NLRB. v. Cont'l Hagen Corp., 932 F.2d 828, 832 (9th Cir. 1991); United States v. Wash. Int'l Ins. Co., 25 CIT 1239, 1247, 177 F. Supp. 2d 1313, 1321 (2001) (deciding that § 362(a) would not apply to a surety who is not the debtor subject of the bankruptcy proceeding).

[7] Section 362(a) of Title 11 provides, in relevant part:

> Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed

2012). "The purpose of the automatic stay is to 'give[] the debtor a breathing spell from his creditors. . . . It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him to bankruptcy.'" In re Robinson, 764 F.3d 554, 559 (6th Cir. 2014) (quoting H.R. REP. No. 95–595, at 340 (1977), as reprinted in 1978 U.S.C.C.A.N. 5963, 6296–97).

However, significantly and directly on point here, "the automatic stay protection does not apply to all cases; there are statutory exemptions, and there are non-statutory exceptions." Dominic's Rest., 683 F.3d at 760; see. e.g., Seiko Epson Corp. v. Nu-Kote Int'l, Inc., 190 F.3d 1360, 1364 (Fed. Cir. 1999) ("[P]roceedings that do not threaten to deplete the assets of the debtor need not be stayed."), reh'g denied (Oct. 19, 1999). One such statutory exception to the automatic stay, enumerated in 11 U.S.C. § 362(b)(4), relates to the enforcement of the Government's police or regulatory powers. In order to prevent abuse by debtors improperly seeking refuge under the bankruptcy laws, Congress provided that certain governmental actions, including the "continuation of an action or proceeding by a governmental unit . . . to enforce such governmental unit's or organization's police and regulatory power," are exempt from the automatic stay provisions of 11 U.S.C. § 362(a). Id. § 362(b)(4); see United States v. Nicolet, Inc., 857 F.2d 202, 207 (3d Cir. 1988); 3 COLLIER ON BANKRUPTCY ¶ 362.05[5][a] (Alan N. Resnick & Henry J. Sommer eds., 16th

---

under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of--
    (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title[.]

ed. 2017). "[T]he policy behind § 362(b)(4) is 'to prevent the bankruptcy court from becoming a haven for wrongdoers.'" SEC v. Towers Fin. Corp., 205 B.R. 27, 30 (S.D.N.Y. 1997) (quoting SEC v. Elmas Trading Corp., 620 F. Supp. 231, 240 (D. Nev. 1985), aff'd, 805 F.2d 1039 (9th Cir. 1986)); see also In re Bilzerian, 146 B.R. 871, 873 (M.D. Fla. 1992) (citing the legislative history of § 362(b)(4) for the same).

To ascertain whether the proceeding at issue falls within the scope of § 362(b)(4), courts have applied two "related, and somewhat overlapping" tests: the pecuniary purpose test and the public policy test. In re Nortel Networks, Inc., 669 F.3d 128, 139 (3d Cir. 2011) (quoting Lockyer v. Mirant Corp., 398 F.3d 1098, 1108 (9th Cir. 2005)). The Court of Appeals for the Third Circuit has summarized these tests as follows:

> The pecuniary purpose test asks whether the government primarily seeks to protect a pecuniary governmental interest in the debtor's property, as opposed to protecting the public safety and health. The public policy test asks whether the government is effectuating public policy rather than adjudicating private rights. If the purpose of the law is to promote public safety and welfare or to effectuate public policy, then the exception to the automatic stay applies. If, on the other hand, the purpose of the law is to protect the government's pecuniary interest in the debtor's property or primarily to adjudicate private rights, then the exception is inapplicable. The complementary tests "are designed to sort out cases in which the government is bringing suit in furtherance of either its own or certain private parties' interest in obtaining a pecuniary advantage over other creditors."[8]

Id. at 139–40 (citing Chao, 270 F.3d at 385, 389). The legislative history of § 362(b)(4) provides that "where a governmental unit is suing a debtor to prevent or stop violation of fraud, . . . or

---

[8] The Court of Appeals for the Third Circuit has stated that "[i]t is unclear whether the government action must meet both tests to fall within the police power exception." Nortel Networks, 669 F.3d at 139 n.12. The court's analysis infra does not hinge on either test alone, and so the court does not attempt to resolve the question of whether only one, or both, tests must be satisfied to allow the action at issue.

similar police or regulatory laws, or attempting to fix damages for violation of such a law, the action or proceeding is not stayed under the automatic stay." Id. at 141 (quoting S. REP. NO. 95–989 at 49 (1978), as reprinted in 1978 U.S.C.C.A.N. 5787, 5838).

Police power proceedings that fall within the scope of § 362(b)(4) are limited in that while "the exception extends to permit an injunction and enforcement of an injunction, and to permit the entry of a money judgment, [it] does not extend to permit enforcement of a money judgment." Nicolet, 857 F.2d at 208 (quoting S. REP. NO. 95–989, at 52 (1978), as reprinted in 1978 U.S.C.C.A.N. 5787, 5838; H.R. REP. No. 95–595, at 343 (1977), as reprinted in 1978 U.S.C.C.A.N. 5963, 6299). "As the legislative history explicitly notes, the mere entry of a money judgment by a governmental unit is not affected by the automatic stay, provided of course that such proceedings are related to that government's police or regulatory powers." Penn Terra Ltd. v. Dep't of Envtl. Res., Com. of Pa., 733 F.2d 267, 275 (3d Cir. 1984) (citation omitted). The reasoning behind permitting entry of money judgments despite the automatic stay is that "[b]y simply permitting the government's claim to be reduced to a judgment, no seizure of property takes place." Nicolet, 857 F.2d at 209; see In re Mystic Tank Lines Corp., 544 F.3d 524, 527 (3d Cir. 2008). By contrast, an action for enforcement of a money judgment is manifested "when, having obtained a judgment for a sum certain, a plaintiff attempts to seize property of the defendant in order to satisfy that judgment." Penn Terra, 733 F.2d at 275 (citation omitted).

Once a civil penalty action has been commenced by the United States for a violation of 19 U.S.C. § 1592(a), "all issues, including the amount of the penalty, shall be tried de novo." 19 U.S.C. § 1592(e). Thus, the Court determines whether a violation has been committed for purposes of fixing a civil penalty, United States v. Pan Pac. Textile Grp., Inc., 29 CIT 1013, 1027–28, 395 F. Supp. 2d 1244, 1256–57 (2005), and determines the amount of the penalty for a violation of

section 1592(a) de novo.  See United States v. Dantzler Lumber & Exp. Co., 16 CIT 1050, 1057, 810 F. Supp. 1277, 1284 (1992) ("[T]he actual amount to be paid, if any, is determined only at the end of a full and fair exposition of the transactions challenged.").

The Government argues before the court that its "action against Rupari does not involve a governmental pecuniary interest in Rupari's property, and it is not designed to adjudicate any private rights."  Pl.'s Mem. at 10.  The Government contends that "a penalty action that was commenced to fix monetary penalties for Rupari's fraudulent violation of 19 U.S.C. § 1592(a), . . . is precisely the type of proceeding contemplated by the exceptions to the automatic stay set forth in [11 U.S.C. § 362 (b)(4)]."[9]  Id.

Rupari responds that "based on the specific facts before this Court, at this stage in the proceeding, [the Government] is pursuing the instant litigation solely for its own pecuniary benefit, which takes this proceeding outside the ambits of the exceptions of 11 U.S.C. § 362(b)(4)."  Def.'s Mem. at 1.  Rupari submits that an aspect of pecuniary purpose test is an inquiry into whether the "specific acts the government wishes to carry out . . . would result in an economic advantage to the government or its citizens over third parties in relation to the debtor's estate."  Def.'s Mem. at 5–6 (quoting In re Commonwealth Cos., Inc., 913 F.2d 518, 523 (8th Cir. 1990)).  Rupari asserts that the Government "no doubt, seeks an economic advantage over other creditors in relation to [Rupari's] estate," and thus is not "pursuing this litigation to protect the public safety and health."  Def.'s Mem. at 6.  Rupari argues that because it is undergoing liquidation, rather than a corporate

---

[9] The Government states that this action falls within the exceptions of 11 U.S.C. § 362(b)(5) as well as the exceptions of 11 U.S.C. §362(b)(4). Pl.'s Mem. at 1.  However, 11 U.S.C. § 362 was amended in 1998, combining paragraphs (b)(4) and (b)(5) into one paragraph, (b)(4).  Omnibus Consolidated and Emergency Supplemental Appropriations Act, Pub. L. No. 105-277, § 603(1), 112 Stat. 2681–886.

reorganization sans liquidation, "there are no more bad actors of which the [Government] to make an example."[10] Def.'s Mem. at 6. Rupari further asserts that Customs "already has an entitlement to file a proof of claim in the Bankruptcy Case, just like any other unsecured creditor of the Debtor," because it previously assessed a $2 million penalty in administrative proceedings. Def.'s Mem. at 7.

Rupari in conclusion asserts that the Government, upon obtaining a money judgment in this case, would liquidate the presently unliquidated, contingent claim it has submitted in the bankruptcy proceeding,[11] and so "win[] by default at a time when [Rupari] has actively defended against [the Government's] efforts in this litigation for over seven years." Def.'s Mem. at 7. In summary, Rupari asserts that if this action were allowed to proceed, then the Government would "win[] by default, obtain[] a liquidated claim to which [the Government] may not otherwise be entitled to, and obtain[] a larger pro rata portion of any distribution to unsecured creditors in the Bankruptcy Case as a result, to the detriment of others." Id.

---

[10] Rupari also points out that "the incidents complained of . . . occurred over fifteen years ago," that "[m]ajority ownership of the Debtor has changed at least once since [then,]" and that the "employee who allegedly made the false statements on behalf of [Rupari] to [Customs] passed away during these proceedings." Def.'s Mem. at 6 n.3.

[11] The Government explains that

> [o]n June 27, 2017, Customs mailed a proof of claim to the United States Bankruptcy Court for the District of Delaware, Case No. 17-10794 (KJC), Rupari Food Services, Inc., debtor. Customs' claim identifies the penalty as being "contingent" in the amount of $2,784,636.18. In the event that we obtain a judgment that fixes the amount of the penalty, then Customs will amend its proof of claim to identify it as being liquidated/non-contingent in the fixed amount and, thereafter, Customs will follow the procedures that are applicable to collecting the penalty in bankruptcy court.

Pl.'s Mem. at 7 n.1.

The court is not persuaded by Rupari's contentions that the civil penalty action here should be stayed. The animating purpose of 19 U.S.C. § 1592 is to prevent fraud in the entry of merchandise into the stream of United States commerce. "[Section 1592] is intended to encourage accurate completion of the entry documents upon which Customs must rely to assess duties and administer other customs laws." S. REP. NO. 95-778, at 17 (1978), as reprinted in 1978 U.S.C.C.A.N. 2211, 2229. The thrust of the statute is not the protection of the pecuniary interest of the United States. Indeed, § 1592(a) operates "[w]ithout regard to whether the United States is or may be deprived of all or a portion of any lawful duty, tax, or fee thereby." As the Court of Appeals for the Federal Circuit has made clear, "the plain language of the statute supports [the] position that the damages authorized by § 1592(c) are punitive." United States v. Nat'l Semiconductor Corp., 547 F.3d 1364, 1369–70 (Fed. Cir. 2008). In addition, "Congress's decision to tie the maximum penalty to the culpability of the violator further suggests that '§ 1592 is driven primarily by considerations of deterrence rather than compensation.'" Id. at 1370 (quoting United States v. Complex Mach. Works Co., 23 CIT 942, 950, 83 F. Supp. 2d 1307, 1315 (1999)).

As regards § 1592, it is clearly the "purpose of the law . . . to promote public safety and welfare or to effectuate public policy." Nortel Networks, 669 F.3d at 140. An action under § 1592 accordingly is one where the Government is "effectuating public policy rather than adjudicating private rights." Id. On the facts before the court, the Government is not now "primarily seek[ing] to protect a pecuniary interest in the debtor's property," but is "attempting to fix damages for violation of [fraud]." Id. at 139–41 (quoting S. REP. NO. 95–989 at 49 (1978), as reprinted in 1978 U.S.C.C.A.N. 5787, 5838).

The court is also not persuaded by Rupari's arguments that the specific facts of this case yield an opposite conclusion. Rupari's suggestion that the court should inquire into whether this

action "would result in an economic advantage to the government or its citizens over third parties in relation to the debtor's estate" does not advance its claim here. Def.'s Mem. at 5–6 (quoting Commonwealth Cos., 913 F.2d 518). For Rupari, this citation is at best inapposite; in reality, it supports the Government's position. In Commonwealth Cos., the Court of Appeals for the Eighth Circuit agreed that "§ 362(b)(4) does not include governmental actions that would result in a pecuniary advantage to the government vis à vis other creditors of the debtor's estate," but stated also that this limitation "is consistent with Congress' rationale for not extending the exception to permit the enforcement of a money judgment." 913 F.2d at 523 (emphasis added). By contrast, when the Government "is attempting only to obtain the entry of a money judgment against the debtors for their alleged violation" of the statute, that outcome would not "otherwise give the government a pecuniary advantage over other creditors of the debtors' estate." Id. at 524 (emphasis added). "The entry of judgment would simply fix the amount of the government's unsecured claim against the debtors." Id. That is the situation here. The Government seeks only to fix the amount of the penalty in this action, not to execute a judgment. See Pl.'s Mem. at 7 n.1.

Rupari's argument that the punitive and deterrent qualities of § 1592 are inapplicable because "there are no more bad actors of which the Plaintiff to make an example" is likewise unpersuasive. Def.'s Mem. at 6. There is no reason for this court to find that liquidation of the corporate entity, or substitution and loss of personae involved at earlier stages of this proceeding, would nullify or render nugatory the § 1592 purpose of "encourag[ing] accurate completion of the entry documents upon which Customs must rely to assess duties and administer other customs laws." S. REP. NO. 95-778, at 17 (1978), as reprinted in 1978 U.S.C.C.A.N. 2211, 2229. Nor is the vintage of the factual background in this case a basis for finding that the Government has ceased effectuating public policy at some point along the way.

Finally, it is instructive that courts across the country have applied § 362(b)(4) to prevent stays from being effected in cases where the Government is concurrently pursuing a fraud claim against a defendant who has filed for bankruptcy.[12] To the extent that Rupari suggests that continuing proceedings to enter judgment would as a practical matter be a waste of resources as the civil penalty sum is already, in some form, before the Bankruptcy Court, Def.'s Mem. at 7, that question is not within the province of this court. Under the framework of the separation of powers, such prosecutorial decisions are matters for the executive, not the judiciary. See Mullins v. U.S. Dep't of Energy, 50 F.3d 990, 993 (Fed. Cir. 1995).

---

[12] See, e.g., Commonwealth Cos., 913 F.2d at 525 ("[T]he legislative history of § 362(b)(4) explicitly recognizes that a fraud law is a police or regulatory law. The [False Claims Act] is certainly a fraud law."); In re Universal Life Church, Inc., 128 F.3d 1294, 1298 (9th Cir. 1997) ("[A] civil suit brought pursuant to the Federal False Claims Act is sufficient to satisfy the section 362(b)(4) exception."), as amended on denial of reh'g (Dec. 30, 1997); United States ex rel. Green v. Inst. of Cardiovascular Excellence, PLLC, 2016 WL 2866567, at *2 (M.D. Fla. 2016) ("FCA actions are exempt from the automatic stay through the entry of judgment."); id. at *2 n.1 ("The Court previously considered and declined to follow the holding of In re Bicoastal Corporation[, 118 B.R. 854 (M.D. Fla. 1990)] in light of the more persuasive rationale from [Commonwealth Cos.] and Judge Paskey's subsequent and contrary ruling in In re Bilzerian."); Bilzerian, 146 B.R. at 873 (finding an exception to the automatic stay for an SEC action seeking injunctive relief and disgorgement); Towers Fin. Corp., 205 B.R. at 30 ("The SEC's prosecution of a civil fraud action is excepted from the automatic stay under [§ 362(b)(4)]."); In re First Alliance Mortgage Co., 263 B.R. 99, 110 (9th Cir. 2001) (holding state's prosecution of restitution claims in its consumer fraud action were not stayed); In re Mickman, 144 B.R. 259 (E.D. Pa. 1992) (considering complaint that included claims for common law fraud, inducement of breach of fiduciary duties, unjust enrichment, payment under mistake of fact, fraudulent conveyances, and the use of corporations as alter egos); United States v. X, Inc., 246 B.R. 817 (E.D. Va. 2000).

In sum, as the Government's civil penalty action here is rooted in its enforcement of the United States customs laws to interdict and remedy the fraudulent importation of merchandise, it falls squarely within the scope of 11 U.S.C. § 362(b)(4).  Therefore, insofar as the Government seeks only the entry of a money judgment, its action is exempt from the automatic stay effected by 11 U.S.C. § 362(a) and shall proceed accordingly.

**SO ORDERED**.

/s/     Gary S. Katzmann
Judge

Dated: August 10, 2017
New York, New York